UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DU'BOIS A. CROCKROM,
                              Plaintiff,

-v-

BANK OF AMERICA, N.A., BANK OF
AMERICA CORPORATION,
                              Defendants.

20-CV-13 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Du'Bois A. Crockrom brings this putative class action against Defendants Bank

of America, N.A. ("BANA") and Bank of America Corporation ("BAC"), claiming that

Defendants breached their Deposit Agreement for personal deposit accounts.  Specifically,

Plaintiff alleges that Defendants assessed overdraft fees for his and other account-holders'

non-recurring purchases, in contravention of "the express terms of the Deposit Agreement."

(Dkt. No. 1 ¶ 77.)  Defendants now move to dismiss the Complaint for lack of personal

jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and (6).

For the reasons that follow, Defendants' Rule 12(b)(2) motion is granted in part and denied in

part, and their Rule 12(b)(6) motion is granted in full.

## I.      Background

In June 2010, Defendants committed to ending overdraft fees for "one-time" or

"non-recurring" debit card transactions.  (Dkt. No. 1 ¶¶ 24, 27.)  They updated their Deposit

Agreement for personal deposit account-holders accordingly.  (*Id.*)  Defendants' new Deposit

Agreement reads:

> *With our Standard Overdraft Setting*, we do not authorize
> overdrafts for everyday non-recurring debit card transactions and
> ATM transactions.  This means that we decline everyday

1

> non-recurring debit card transactions and ATM transactions when
> we determine that at the time of the transaction you may not have
> enough available funds in your account (or in any applicable
> Overdraft Protection plan) to cover the transaction.

(Dkt. No. 1-1 at 13 (emphasis in original).)  The Deposit Agreement explains that "[e]veryday non-recurring debit card transactions are usually purchases made with your debit card or debit card number on a one-time or day-to-day basis."  (Dkt. No. 1-1 at 12.)  The Deposit Agreement lists purchases of "groceries, gas, or coffee in the morning" as examples of non-recurring transactions and listed "automatic bill payments," like "rent, mortgage, car, or utility payments," as examples of recurring transactions.  (*Id*.)

Plaintiff alleges that he had a personal deposit account with Defendants during his proposed class period, which spans from June 18, 2010, to April 6, 2017.  (Dkt. No. 1 ¶ 57.)  He alleges that Defendants "routinely" assessed overdraft fees on his account in relation to "transactions that were plainly 'non-recurring' within the meaning of the Deposit Agreement." (*Id*.)  Plaintiff highlights five transactions, in the amounts $10.00, $10.00, $15.00, $20.00, and $30.00, with Starbucks that he undertook in November 2015.  (Dkt. No. 1 ¶ 58.)  Each of these transactions was logged as a recurring transaction by Defendants; Defendants approved the transactions, allowing Plaintiff to overdraft his account; and Defendants assessed five overdraft fees on Plaintiff's account, amounting to $175.00 in fees.  (*Id*.)  Plaintiff alleges that "[o]n several other occasions," Defendants likewise assessed overdraft fees in relation to Plaintiff's purchases from vendors other than Starbucks.  (Dkt. No. 1 ¶ 59.)  Plaintiff emphasizes that none of these supposedly recurring transactions "had been set up to occur automatically at a predetermined interval of time."  (Dkt. No. 1 ¶¶ 58, 59.)

On January 2, 2020, Plaintiff alerted Defendants to their improper assessment of overdraft fees by filing this action.  (Dkt. No. 1.)  Defendants responded by filing their motion to

dismiss pursuant to Rules 12(b)(2) and (6).  (Dkt. No. 15.)  The Deposit Agreement provides that

"the law of the state where [Plaintiff's] account is located," New York, shall govern the parties'

dispute.  (Dkt. No. 1-1 at 2, 48.)

## II.     Legal Standard

### A.     Rule 12(b)(2) Standard

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "the

plaintiff bears the burden of establishing that the court has jurisdiction over the

defendant."  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir.

2005) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d

Cir. 1999)).  Where, as here, there has been no "full-blown evidentiary hearing on the motion,

the plaintiff need make only a prima facie showing of jurisdiction."  *Id.* (quoting *Bank Brussels*,

171 F.3d at 784).  At this "preliminary stage," a prima facie showing sufficient to defeat

a Rule 12(b)(2) motion "may be established solely by allegations" pleaded in good

faith.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (per curiam)

(quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  The

allegations, though, must be more than "conclusory statement[s]"; rather, they must state specific

"facts supporting th[e] conclusion" that jurisdiction is proper.  *Jazini v. Nissan Motor Co.*, 148

F.3d 181, 184 (2d Cir. 1998).

### B.     Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In

considering the motion to dismiss, the Court "must accept as true all of the factual allegations

contained in the complaint."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).  And

while "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court must draw "all inferences in the light most favorable to the nonmoving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

### III.     Discussion

In their motion to dismiss pursuant to Rule 12(b)(2), Defendants argue that the Court lacks personal jurisdiction over BAC because BAC, a Delaware corporation with its principal place of business in North Carolina, is "a holding company [of BANA's] with no connection to Plaintiff's claim[]." (Dkt. No. 16 at 12, 13 n.6.)  Defendants also argue that the Court lacks personal jurisdiction with respect to Plaintiff's nationwide class action.[1]  With respect to their motion to dismiss pursuant to Rule 12(b)(6), Defendants argue that Plaintiff's breach-of-contract claim fails on the merits because it is barred by Plaintiff's noncompliance with the Deposit Agreement's notice provision.  These arguments are considered in turn.

### A.     Personal Jurisdiction

To adjudicate a claim, a court must have either "general" or "specific" personal jurisdiction over the defendant.  *See Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014).  A court has general jurisdiction over a corporation when the corporation is "fairly regarded as at home" in the forum state, based on its incorporation or "continuous and systematic" contacts in the state.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 924 (2011).  A court has specific jurisdiction when the corporation (1) "has minimum contacts with the forum" state, (2) "the cause of action relates to or arises from those contacts," and (3) "the assertion of

---

[1] Subject matter jurisdiction appears to be proper under 28 U.S.C. § 1332(d).  *See* Dkt. No. 1 ¶ 12.

4

personal jurisdiction would comport with fair play and substantial justice." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019) (internal quotation marks and citation omitted).

As Defendants contend, Plaintiff has not alleged the kind of contacts necessary for the Court to exercise general jurisdiction over BAC.  BAC is not a New York corporation, and New York is not its principal place of business.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business" (citation omitted)).

Plaintiff has also failed to allege that BAC has minimum contacts with New York and that this case arises from those minimum contacts.  Plaintiff suggests that BAC itself "entered into a contract to provide banking services to Plaintiff," pointing to the use of the BAC name and logo in the Deposit Agreement and its incorporated documents, BAC's copyrights to such documents, the use of the BAC name and logo on the personal banking website for his account, and similar such facts.  (Dkt. No. 25 at 22–23.)  Plaintiff's suggestion, however, is belied by the plain terms of the Deposit Agreement, which states, "In this agreement, 'Bank of America', 'Bank', 'we', 'us' and 'our' mean[] Bank of America, N.A."  (Dkt. No. 1-1 at 1.)  Nowhere does the Deposit Agreement or any other document suggest that BAC is a contracting party.  (Dkt. No. 1-1; Dkt. No. 1-2; Dkt. No. 1-3.)  BAC's copyrights are not to the contrary.  Furthermore, the "Bank of America Clarity Statement" that instructed Plaintiff on how to use his personal deposit account, including how to sign up for online banking, provides that "[b]anking products are provided by Bank of America, N.A.," not BAC.  (Dkt. No. 1-7 at 3.)

In the alternative, Plaintiff suggests that BANA acted as BAC's agent in entering into the

contract and that BAC is responsible as BANA's principal.  (*Id.*)  As the New York Court of

Appeals has explained, Plaintiff "need not establish a formal agency relationship between

defendants" to sustain an exercise of personal jurisdiction by a New York-based court.  *Kreutter*

*v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988).  Instead, Plaintiff "need only convince the

court that [BANA] engaged in purposeful activities in this State in relation to [Plaintiff's]

transaction for the benefit of and with the knowledge and consent of [BAC] and that [BAC]

exercised some control over [BANA] in the matter."  *Id.*; *see also EFCO Corp. v. Nortek, Inc.*,

205 F.3d 1322, 2000 WL 254047, at *1 (2d Cir. 2000) (unpublished table decision) ("Personal

jurisdiction over a parent corporation whose subsidiary has transacted business in New York

exists when the nondomiciliary parent corporation knew of and consented to the acts of its

in-state subsidiary that gave rise to the cause of action, and 'exercised some control over [the

subsidiary] in the matter.'" (citing *Kreutter*, 71 N.Y.2d at 467)).  Here, Plaintiff has alleged no

facts indicating BAC's knowledge of BANA's transactions or its level of control over BANA.

*Cf Pfizer Inc. v. Perrigo Co.*, 903 F. Supp. 14, 16 (S.D.N.Y. 1995) (identifying a parent

corporation's "sufficient control over its subsidiaries" based on the corporation's SEC filings,

which the plaintiff submitted to the court).  Instead of making the requisite prima facie showing

of jurisdiction, Plaintiff argues that "it is impossible for [him] to determine the exact scope and

extent of BAC's role in the conduct giving rise to his claims."  (Dkt. No. 25 at 23.)  The Court is

not persuaded that it has personal jurisdiction over BAC, and Plaintiff's claim with respect to

BAC is dismissed.

Additionally, Defendants argue that the Court lacks personal jurisdiction with respect to

Plaintiff's nationwide class action.  (Dkt. No. 16 at 14–15.)  The Court need not dwell on this

argument, which is premature.  As a number of courts in the Second Circuit have held, "personal

jurisdiction over plaintiff's out-of-state claims is best assessed at the class certification stage, not

on the instant motion to dismiss."  *Suarez v. California Natural Living, Inc.*, No. 17-cv-9847,

2019 WL 104662, at *6 (S.D.N.Y. Mar. 5, 2019); *Simon v. Ultimate Fitness Grp., LLC*, No.

19-cv-890, 2019 WL 4382204, at *4 (S.D.N.Y. Aug. 19, 2019) (collecting cases).  Prior to the

certification of a class, out-of-state class members "are not, and may never be, joined in [the]

action."  *Suarez*, 2019 WL 104662, at *6.  The Court declines to speculate on whether it would

have personal jurisdiction with respect to a yet-hypothetical class and denies this part of

Defendants' Rule 12(b)(2) motion.

> ### B.      Plaintiff's Breach-of-Contract Claim

With respect to the merits, the Deposit Agreement includes a section entitled "Reporting

Problems" that establishes a 60-day window during which account-holders must apprise BANA

of "suspected problems or unauthorized transactions" that appear on their account statements.

(Dkt. No. 1-1 at 28–29.)  Account-holders who fail to report a problem or unauthorized

transaction during the 60-day window "may not make a claim against [BANA] relating to the

unreported problems or unauthorized transactions, regardless of the care or lack of care [BANA]

may have exercised in handling [the] account."  (Dkt. No. 1-1 at 29.)  The Deposit Agreement

defines "[p]roblems and unauthorized transactions" to include:

> suspected fraud; missing deposits; unauthorized electronic
> transfers; missing, stolen, or unauthorized checks or other
> withdrawal orders; checks or other withdrawal orders bearing an
> unauthorized signature, endorsement or alteration; illegible
> imagegs; encoding errors made by you or us; and counterfeit
> checks.  This is not a complete list.

(Dkt. No. 1-1 at 28.)  Defendants characterize their treatment of Plaintiff's transactions, if erroneous, as a "problem" that Plaintiff failed to report and is barred from raising, for the first time, in a years-late litigation.

Defendants correctly interpret and apply the Deposit Agreement's notice requirement. The overdraft fees at issue were assessed based on BANA's alleged coding of non-recurring transactions as recurring transactions.  Plaintiff does not allege that BANA willfully miscoded the transactions, instead explaining that BANA relied upon merchants' classifications of the transactions.  (Dkt. No. 1 ¶¶ 42–44.)  In other words, BANA's alleged miscoding was erroneous, rather than intentional.  It follows that Plaintiff's account statements included "encoding errors made by . . . [BANA]," one of the enumerated classes of "problems" that Plaintiff was bound to report or be barred from raising after sixty days.

Plaintiff resists this conclusion, urging that the notice requirement "ultimately protect[s] account holders from third parties," not "from the Bank's own . . . practices."  (Dkt. No. 25 at 12–13.)  But Plaintiff's reading of the notice requirement is incongruous with the Deposit Agreement's unambiguous text, which places responsibility on account-holders to identify BANA's own coding errors.  Plaintiff also urges that his noncompliance with the notice requirement be excused because BANA understood that "merchants are inconsistent at best" in classifying transactions as non-recurring or recurring and thus had constructive notice of the coding errors.  (Dkt. No. 1-8 at 24.)  This, too, is at odds with the Deposit Agreement's clear disclaimer of liability for unreported claims, "regardless of the care or lack of care [BANA] may have exercised."  (Dkt. No. 1-1 at 29.)

Finally, Plaintiff argues that his noncompliance should be excused because BANA materially breached the Deposit Agreement by assessing the overdraft fees.  Plaintiff does not

8

explain, however, why BANA's coding errors — events that the Deposit Agreement acknowledges may occur — and the resulting overdraft fees rise to the level of a material breach, or a breach "so substantial that it defeats the object of the parties in making the contract." *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997) (citing *Babylon Assocs. v. Cnty. of Suffolk*, 101 A.D.2d 207, 215 (2d Dep't 1984)).

In enforcing the Deposit Agreement's notice requirement, the Court follows a well-trodden path.  New York courts regulary deny relief to account-holders who "failed to timely notify the defendant [of a problem] as required by the agreement of the parties." *J. Sussman, Inc. v. Manufacturers Hanover Trust Co.*, 140 A.D.2d 668, 668–69 (2d Dep't 1988); *Catalano v. Marine Midland Bank*, 303 A.D.2d 617, 618 (2d Dep't 2003); *Radon Const. Corp. v. Colwell*, 248 A.D.2d 366, 366 (2d Dep't 1998); *see also Benex LC v. First Data Merchant Servs. Corp.*, No. 14-cv-6393, 2016 WL 1069657, at *4 (E.D.N.Y. Mar. 16, 2016).  The out-of-state opinions that Plaintiff appends to his opposition to the motion to dismiss, neither of which analyzes a notice requirement, present no reason for the Court to look past Plaintiff's noncompliance with the Deposit Agreement's terms or to depart from longstanding New York practice.  (Dkt. No. 25-1; Dkt. No. 25-2.)

Plaintiff's overdraft fees were the result of BANA's erroneous coding, an unreported "problem" within the meaning of the Deposit Agreement.  Plaintiff's breach-of-contract claim is therefore barred as a claim "relating to the unreported problem[]."  (Dkt. No. 1-1 at 29.)

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss pursuant to Rule 12(b)(2) is GRANTED in part and DENIED in part.  Defendants' motion to dismiss pursuant to Rule 12(b)(6) is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 15 and to close this

case.

SO ORDERED.

Dated: November 17, 2020
New York, New York

J. PAUL OETKEN
United States District Judge